Thank you for allowing me to address the Court today. The thrust of our position is essentially that the immigration judge, as well as the Board of Immigration Appeals, had a disproportionate focus and attention on the discrepancies. Now, clearly there were discrepancies in the record. There's no question about that. Numerous discrepancies, troubling discrepancies. The immigration judge focused on the discrepancies between the testimony during the immigration hearing, testimony at the asylum office, and the record that was presented, the exhibits, and so on. Our premise is that the immigration judge, subsequently the Board of Immigration documents I'm referring to, were never contested in terms of their authenticity. It is common in these type of proceedings, asylum proceedings before an immigration judge, that the government takes certain documents, offers them to their forensic laboratories, returns to the asylum office or the immigration court, and informs that the documents were not genuine. That was not the case here. The documents that I intend to refer to in a minute were entered into the record. There was no question of authenticity. There was no forensic examination. And thus, I submit their evidence. Before addressing the documents, I would like to make another point. The premise of our position is that the immigration judge did not adequately treat certain forms of evidence, specifically documents. However, there's one exception I'd like to point out initially. That is the fact that my client came to the United States in 2001 with a visa, departed the United States, returned to his native country within approximately 14 months, came back to the United States with a visa. What is unique about this scenario and distinguishable from other asylum cases that I've seen is that a lot of people come to this country to find a better life. Once they're here, they stay. They do not go back to their native country. A lot of people who follow that route come to the attention of the immigration service, and they file asylum applications in order to present some claim of justification for remaining in the United States. That's not what happened here. This individual could have stayed in the United States following his first admission to the United States, not filed an asylum claim. In an option, a number of options, he could have married a citizen to gain a benefit. He did not. The first thing he did was he returned to his native country. His statement indicates that he did this primarily because he missed his family, and hopefully things had improved. But the point I'm making is that he did go back. If his intention was to come here and create some claim, I think that's an indication that it's not correct. And this is – and let me just go a little bit beyond that. When he did return to the United States, as he tells us in our – as he tells us in our record, the second time within a year, statutory requirement, he did file an application for political asylum. And that is the reason we're here today. Point about – All that being said, the immigration judge made an adverse credibility finding, and our task is to determine whether that's supported by the record. So why do you think that the  Well, there is certainly a lot of inconsistent evidence in this record. But my contention is that it cannot be supported because of the failure of the judge to treat and address and in some way reconcile the adverse credibility finding with the documents deemed to be genuine are from, in one instance, the police department, government officials. These documents tell us a number of very important things. He was arrested. He was arrested for, as we submitted, what would be considered a free speech violation. There's no doubt from the documents that he was arrested, and that was the basis. He was speaking against the government at a rally. The documents – the other documents I'd like to refer to is a medical report that indicates he was treated, he was injured. The other document I'd like to refer to is essentially a warrant that states that he absconded. Collectively, these documents indicate or certainly form the basis for the conclusion that he was persecuted on the basis of his political opinion. I believe this is strong evidence. Now, my contention is not to ask this Court to remand this case for the immigration judge to grant political asylum. We are simply asking that the case be remanded for further evaluation, consideration, and treatment of the genuine, unobjected to, authenticated documents and address the evidence that they create. What I'm afraid took place here is that there were discrepancies, some de minimis, some substantial. And the Court may have gotten carried away with those discrepancies and overlooked the treatment of substantial, credible evidence in the form of the documentation. So essentially what we are asking is that we be given a further opinion on the validity and importance of those forms of evidence. I think the best way to look at it is the Court should, before arriving at a conclusion that there were adverse, there is an adverse credibility finding, is to look at the whole is not complete because of the lack and failure to address the documentation. That is essentially the thrust of our argument. Thank you, counsel. You have a minute and 15 to reserve. Can I reserve that? Yes. Thank you. You can sit at counsel's table here. May it please the Court. Ada Bosk on behalf of the United States. Because Massoud's testimony was internally inconsistent and inconsistent with the documents that he proffered, the immigration judge recently found him to lack credibility and the Court to deny the petition for review. The immigration judge identified about 11 specific cogent reasons for finding Mr. Massoud incredible. And it's not that the immigration judge did not consider the documents that Massoud submitted. It's that his testimony was inconsistent with what those documents showed. The inconsistencies related not only to his political participation, which he said was the reason the police were interested in him, but also with regard to the arrest, the injuries that he allegedly sustained, and his ultimate escape from the police. I'd actually like to focus on the last three, unless the Court has questions about his political participation, since that was the focus. I mean, it's a pre-Real Idea Act, so I think we need to get to those that go to the heart of the claim. Okay. Well, I would say very briefly, the political participation was why he said the police were after him. The arrest. The opposing counsel has referenced the April, not specifically, but generally, the April 2001 arrest. Massoud submitted three different translations of that document. And the immigration judge took the unusual process of actually having Massoud read that document aloud and having a translator then interpret it into English. Those documents, the various translations, were inconsistent with each other. The story that Massoud wanted to tell was that he was participating in a demonstration and that he was identified as a leader and subsequently arrested at home. Well, two of the translations don't show that. They show that he was, if anything, he was arrested as part of a general demonstration. And that's significant. I mean, that does go to the heart of his claim, because it is a far different thing to be arrested as part of a general demonstration than it is to be singled out as a political leader and arrested at home. The documents he submitted simply don't show that. The medical issue. Mr. Massoud initially testified that he was, very plainly, that he was injured on his head and he was beaten across with a baton, I believe, in his back. When he was confronted with the medical documentation, which showed no injuries to his back, he slowly just walked away from his testimony and ultimately said, the document's right. There was only an injury to the head. Well, that's significantly different from what his testimony was at the onset. And the immigration judge reasonably could look at that as an inconsistency that went to the heart of his claim. The great escape is the last big issue that the immigration judge identified, and that relates to the detention order that was referenced before. I mean, Mr. Massoud demonstrated how he lifted a blindfold in order to see where he was and escape. When he was confronted with his prior testimony that he had his hands tied behind his back, he changed his story. Then he said he tried to lift the blindfold with his shoulders. Then he said he was able to get out of a police car, even though his hands were still tied behind his back. Well, when he was asked about that, he said, oh, when I was in the police car, I was able to loosen the ties that were binding my hands and I was able to run. He could never explain why in his asylum application he said he ran all the way home, but testified that he took a bus and a taxi to get home. I mean, these are – there were so many inconsistencies that the immigration judge had a reasonable basis to question not simply his testimony, but the documents that he submitted. I mean, the detention order that opposing counsel has referenced refers to Mr. Massoud absconding in 2002, in June of 2002. Well, we know that's not possible because he was in the United States, and it took him a long time to testify, to realize in his testimony that what he was saying was inconsistent and not possible, given what his – the entirety of his testimony was. So that's the – the immigration judge identified specific reasons. Mr. Massoud was given ample opportunity to address each of the inconsistencies. He either could not explain them or change his testimony, or he asserted that almost every document he submitted had a typographical error, and that he knew that they had a typographical error and yet had made no effort to provide a corrected copy if there was indeed a typographical error. That was simply his – at the time, his counsel's speculation. So for those reasons and the reasons set forth in our brief, we asked that the Court deny the petition for review. Any further questions on the panel? I have none. Thank you, counsel. Thank you, Your Honor. You have a minute, 15, if you want to take rebuttal. I do have one question to start. What is the single best document for your argument? The police report. It is at age 311 of the record. It's an arrest report. It talks about the motivation for the arrest. That's not to suggest that the other documents are not important, but if we combine these documents, the arrest, the warrant, and the hospital report, we must conclude that this individual was harmed because of his political activities. Again, I don't mean to suggest that there were not discrepancies. There clearly were. But I think more weight should have been given, more development of the issues that these documents presented should have been performed. And again, that is essentially all that we are seeking, is that the case be remanded with instructions for the immigration judge to appropriately and properly address the evidence. Thank you, counsel. Your time has expired. Thank you. Thank you both for your arguments. The case just heard will be submitted for decision.
judges: Rosenthal, Fletcher B. , Thomas